301 S.E.2d 158

**Dana Lee HECK**

v.

**James Wayne HECK.**

**No. 15631.**

Supreme Court of Appeals of
West Virginia.

Nov. 19, 1982.

Rehearing Denied March 30, 1983.

Leo Catsonis, Charleston, for appellant.

James F. Cain, Pros. Atty., Elkins, for
appellee.

PER CURIAM:

Appellant, Dana Lee Heck,* appeals
from a July 2, 1982 final order of the
Circuit Court of Randolph County award-
ing permanent custody of the parties' two
minor children to appellee, James Wayne
Heck. The July 2 order was entered pursu-
ant to a February 24, 1982 order of this
Court remanding the matter to the circuit
court to make specific findings of fact and
conclusions of law regarding the award of
custody. Appellant contends that on re-
mand the trial court failed to follow the
mandate of *Garska v. McCoy,* 167 W.Va.
59, 278 S.E.2d 357 (1981) that custody be
awarded to a fit primary caretaker who has
not waived or otherwise relinquished his or
her right to custody. It is clear that the
trial court failed to follow *Garska,* and we
reverse and remand.

We observe initially that neither of the
parties' fitness as a parent has been chal-
lenged, and that nothing in the record indi-
cates that either is in any way unfit to have
custody of the children.

On January 7, 1981 appellant filed a com-
plaint against appellee seeking a divorce
and requesting temporary and permanent
custody of the parties' two daughters. The
appellant was employed full time by the

* Appellant remarried during the course of this litigation and her surname is now Cales.

Randolph County School Board as a sixth-grade teacher. Appellee was employed as a distributor of chainsaws. At a March 12, 1981 hearing in this matter one of the girls was four and one-half years of age and the other was three and one-half years of age. At the hearing appellant claimed to have general responsibility for cooking meals, reading books to the girls, taking them to the doctor and for supervising them at home in the evenings. She called two witnesses who supported her contention that she was the children's primary caretaker.

On direct examination appellee made no affirmative claim that the appellant was not the primary caretaker. During cross examination the appellee engaged in the following colloquy with trial counsel for appellant:

"Q. Well, let me ask you this, whenever the two of you have been together with the children, who, basically, had the responsibility of feeding, bathing, and putting the children to bed, diapering the children and this sort of thing?

A. She did, she's a mother.

Q. And she still a mother [sic]?

A. She is, yes.

Q. And she did have that basic responsibility on her behalf, right?

A. Yes, she did.

\* \* \* \* \* \*

Q. Okay, she did most of it, and you did some of it?

A. Right.

Q. Why didn't you do most of it?

A. Why should I, I'm earning a living for her.

MR. [JAMES F.] CAIN: [COUNSEL FOR APPELLEE] He has a good job, that's my objection.

THE COURT: Well, he answered it.

Q. And your answer was, why should I, you're earning a living?

A. Sure."

While several witnesses, including appellant's mother, Betty Duckwell, testified that in their opinion, the girls would be better served by placing them in the custody of appellee, none suggested that appellant was not the primary caretaker. In fact, the bulk of the testimony by appellee's witnesses tended to reinforce appellant's contention that she was the primary caretaker. For instance, during cross examination of Duckwell the following exchange occurred:

"Q. Did he [appellee] diaper the kids?

A. I beg your pardon?

Q. Did he diaper the kids? Did he feed the kids?

A. A man usually doesn't do these things the first year or two because his children are small. That's the mother's responsibility."

Another defense witness, James Parsons, based his opinion that the custody of the children should be given to appellee upon the fact that in 1979 appellant had absented herself from the home to attend the summer session of West Virginia University. However, Parsons admitted that he thought attending summer school was a good idea and that he had encouraged appellant to remain in school. Partially as a result of attending summer school appellant did subsequently receive her master's degree.

Appellee noted that appellant returned home on Thursdays and left on Monday mornings during the period she attended summer school. Appellee's testimony regarding these weekends further indicates appellant's role in the family:

"Q. Okay, then in the course of that long weekend thing from Thursday or Friday through Monday morning did she then take care of the laundry and get everything ready for the next week when you'd be with the kids?

A. Yes, sir."

Appellee further testified that the decision for appellant to attend summer school was made jointly by the parties.

Finally, we turn to the trial judge's supplemental order of July 2, 1982, issued in response to our February 24, 1982 order requiring him to make specific findings of fact and conclusions of law. The trial judge did not find that appellant was not the primary caretaker, nor did he conclude that the appellant was unfit to have custo-

dy of her daughters. Rather, the lower court complained that syllabus point 6 of *Garska v. McCoy,* 167 W.Va. 59, 278 S.E.2d 357 (1981) was "clearly wrong", and declined to follow it.

 Syllabus point 6 of *Garska, supra,* states as follows:

"In a divorce proceeding where custody of a child of tender years is sought by both the mother and father, the court must determine in the first instance whether the primary caretaker is a fit parent, and where the primary caretaker achieves the minimum, objective standard of behavior which qualifies him or her as a fit parent, the trial court must award the child to the primary caretaker."

In syllabus points 3 and 4 of *Garska* we defined primary caretaker and established broad standards for trial courts to use in determining whether any party to an action is a primary caretaker. Syllabus point 3 states:

"The primary caretaker is that natural or adoptive parent who, until the initiation of divorce proceedings, has been primarily responsible for the caring and nurturing of the child."

Syllabus point 4 explicitly applies the criteria established in the definition above to the trial court's determination of whether a party is the primary caretaker:

"In establishing which natural or adoptive parent is the primary caretaker, the trial court shall determine which parent has taken primary responsibility for the caring and nurturing duties of a parent."

It remains only for us to apply the law established in *Garska* to the facts of this case.

There is no significant evidence in the record to indicate that appellee had a major role in the caring and nurturing duties for the children. The evidence adduced revealed that while both parents had been employed full time during most of the marriage, appellant had been the primary caretaker for the parties' two girls. In fact, both the appellee and the trial court implic-

itly recognized appellant's role as primary caretaker.

 In the absence of any allegation of unfitness, much less a finding of unfitness by the trial judge, appellant, as the primary caretaker, is entitled to permanent custody of the parties' two children. We reverse and remand with directions that the circuit court enter an order in accord with the principles expressed herein.

Reversed and Remanded.